**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wendy Rahier, | No. CV-22-00141-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | |
| Thunderbird Collection Specialists Incorporated, | |
| Defendant. | |

In this action, Plaintiff Wendy Rahier alleges Defendant Thunderbird Collection Specialists (TCS) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e(2)(A) & (8), by failing to remove a dispute notation from its collection item on Rahier's consumer credit file. (Doc. 1 at 3.) Pending before the Court are Rahier's Motion for Partial Summary Judgment, (Doc. 22), and TCS's Motion for Summary Judgment. (Doc. 24.) The Motions are fully briefed. (Docs. 22–25, 27–32.) The Court heard Oral Argument on the motions on June 29, 2023. For the following reasons, the Court will deny Rahier's Motion and grant TCS's Motion.[1]

I.    **Background**[2]

TCS is a debt collector and was attempting to collect on a debt owed to Arizona Arthritis & Rheumatology Associates, P.C., by Rahier, in the amount of $3,223.00 (the

---

[1]  At the June 29 hearing, the Court also heard argument on Plaintiff's Counsel's Motion to Withdraw. (Doc. 20.) In light of its resolution of the motions for summary judgment, the Court will deny the Motion to Withdraw as moot.

[2]  The facts in this background section are undisputed unless otherwise indicated.

Debt). (Docs. 27 at 2; 1 at 2.) Because Rahier originally disputed the Debt, (Docs. 25 ¶ 1; 30 ¶ 1), TCS notified the credit reporting agencies (CRA), including Trans Union, that the Debt was disputed, (Docs. 25 ¶ 2; 30 ¶ 2). Subsequently, Rahier sent a letter through her counsel, to TCS, informing TCS that she was no longer disputing the Debt and requesting the dispute remark be removed from the tradeline. (Docs. 25 ¶ 3; 30 ¶ 3.)

Upon receipt of Rahier's letter, TCS took steps to change the status of the Debt from disputed to not being disputed in the software program it uses to provide debt collection information to the CRAs to which it reports. (Docs. 25 ¶ 4; 30 ¶4–5.) TCS removed the "dispute" designation from the field in the software program which identifies debts that are being disputed (the compliance condition code field), and left the field blank. (Docs. 25 ¶5; 25-1 ¶ 9; 30 ¶¶ 4, 5.) TCS's collection notes document a change of the Debt from disputed to undisputed. (Docs. 25 ¶ 7; 30 ¶ 7.) TCS submitted the revised debt collection information to the CRAs. (Docs. 25 ¶ 6; 30 ¶ 6.)

Rahier's subsequent credit report from Trans Union still showed the Debt as being disputed. (Docs. 30 ¶ 8; 25 ¶ 8.) Rahier states that TCS's procedures were ineffective to remove the dispute designation as evidenced by the Credit Reporting Resource Guide (CRRG), which she identifies as a source of credit reporting industry standards and procedures. (Doc. 23 ¶ 4–5.) According to Rahier, the CRRG establishes that the only way to remove a dispute code is to replace it with another compliance condition code or with "XR" (a removal code). (*Id.* ¶¶ 7, 8.) Thus, although TCS deleted the dispute code, TCS's leaving the compliance code field blank resulted in the continued reporting of the Debt as disputed, as evidenced by Rahier's Trans Union credit report. (*Id.* ¶ 9–10.)

On March 23, 2022, Rahier filed suit against TCS alleging violations of § 1692e of the FDCPA, 15 U.S.C., for falsely reporting that the Debt was disputed. (Doc. 1 at 4–5.)

On March 23, 2023, the parties filed the pending Motions for Summary Judgment. (Docs. 22; 24.) Rahier requests that the Court enter judgment against TCS as to liability and allow the case to proceed to trial on the question of damages. (Doc. 22 at 6.) TCS argues it is entitled to judgment because Rahier cannot prove that TCS violated the FDCPA

1    and that she suffered actual damages. (Doc. 24 at 7, 10.)

2    **II.    Discussion**

3         At issue in this lawsuit is whether TCS's response to Rahier's request caused the

4    dispute remark to continue to be reported to Trans Union. The parties agree that summary

5    judgment is the appropriate mechanism for resolving this case because the facts are

6    undisputed and the issue presented is a matter of law. (Docs. 22 at 6; 24 at 10.)

7         Summary judgment will be granted when the movant has shown "that there is no

8    genuine dispute as to any material fact and the movant is entitled to judgment as a matter

9    of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute

10   is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict in favor

11   of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact

12   is "material" if it might affect the outcome of the suit under the governing law. *Id.* There

13   is no genuine issue of material fact when a party fails to establish an element essential to

14   that party's case and on which that party will bear the burden of proof at trial. *Celotex*

15   *Corp.*, 477 U.S. at 322–23. In its analysis, the court must believe the nonmovant's evidence

16   and draw all inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255.

17        **A.    FDCPA Claim**

18        To prevail on a claim for violation of the FDCPA, a plaintiff must establish that (1)

19   the plaintiff is a consumer, (2) who was the object of a collection activity arising from a

20   debt, (3) the defendant is a debt collector, and (4) the defendant violated a provision of the

21   FDCPA. *See Turner v. Cook*, 362 F.3d 1219, 1227–28 (9th Cir. 2004). The parties here

22   dispute only the fourth element—whether the defendant violated a provision of the

23   FDCPA.

24        Under § 1692e of the FDCPA, "[a] debt collector may not use any false, deceptive,

25   or misleading representation in connection with the collection of any debt." 15 U.S.C. §

26   1692e. The FDCPA's prohibitions include making a "false representation of the character

27   of, . . . or legal status of any debt," (15 U.S.C. § 1692e(2)(A)), and "communicating . . .

28   credit information which is known, or which should be known to be false, including the

1  failure to communicate that a disputed debt is disputed," (15 U.S.C. § 1692e(8)). "The

2  FDCPA does not ordinarily require proof of [an] intentional violation, and is a strict

3  liability statute." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011).

4         On the undisputed facts, Rahier cannot establish an essential element of her claim.

5  Rahier's evidence does not establish that TCS falsely reported information about the Debt

6  to Trans Union. The CRRG is Rahier's sole proof Rahier offers to prove that TCS reported

7  to Trans Union information that it knew or should have known to be false. Rahier argues

8  that the CRRG provides the industry standards and proves that TCS's communication of

9  revised information to Trans Union was ineffective, and the communication therefore false,

10  because TCS did not follow the procedure for removing the disputed designation set forth

11  in the CRRG. The CRRG states that the *only* way to remove a dispute code is to replace it

12  with another compliance condition code or with "XR" (a removal code), which TCS did

13  not do. (Docs. 23 ¶¶ 7, 8; 30 ¶ 6.)

14         The CRRG, however, is not admissible or applicable in resolution of this dispute.

15  First, Rahier fails to provide expert testimony or other evidence which would support her

16  assertion that the CRRG sets forth the credit report industry standards and procedures. *See*

17  Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute

18  a fact cannot be presented in a form that would be admissible in evidence."); *Calvin v.*

19  *Michigan First Credit Union*, No. 19-CV-11519, 2020 WL 3972519, at *4 (E.D. Mich.

20  July 14, 2020) (finding CRRG is inadmissible hearsay because plaintiff did not provide

21  expert witness testimony to establish CRRG as an industry standard).

22         Second, compliance with industry guidelines, such as the CRRG, is not sufficient to

23  prove (or disprove) an alleged violation of the FDCPA. *See, e.g.*, *Koehler v. Waypoint Res.*

24  *Grp., LLC*, No. 8:18-CV-2071-T-60AAS, 2019 WL 5722117, at *2 (M.D. Fla. Nov. 5,

25  2019) (debt collector's noncompliance with industry standards is insufficient to prove an

26  FDCPA claim); *Boatley v. Diem Corp.*, No. CIV. 03-0762-PHX-SMM, 2004 WL 5315892,

27  at *3 (D. Ariz. Mar. 24, 2004) (debt collector's compliance with industry standards is not

28

1    a defense to an FDCPA claim).[3]

2           The evidence, viewed in a light most favorable to Rahier, demonstrates only that:

3    TCS received Rahier's letter and took steps to remove the "dispute" designation from the

4    field in the software program which identifies debts that are being disputed. TCS's

5    collection notes corroborate this and indicate that TCS removed the disputed remark. TCS

6    then reported its information to Trans Union. The record does not contain evidence from

7    Trans Union. There is no evidence that TCS's revisions were not received by Trans Union

8    and no admissible evidence that TCS's manner of revising its data was ineffective. The

9    fact that Trans Union continued to report the Debt as disputed does not, by itself, support

10   the inference that TCS failed to accurately report to Trans Union to the exclusion of other

11   possible explanations for Trans Union's reporting. *See Navarro v. Portfolio Recovery*

12   *Assocs., LLC*, No. CV-18-02333-PHX-JJT, 2019 WL 4418254, at *3 (D. Ariz. Sept. 16,

13   2019) (granting summary judgment in favor of debt collector when plaintiff failed to show

14   evidence that the debt collector reported inaccurate information to the CRA). This is

15   particularly true in light of the undisputed evidence that TCS took steps to remove the

16   "dispute" designation in its collection data. On this record, Rahier cannot establish that

17   TCS reported to Trans Union information about the Debt that was "false, deceptive, or

18   misleading." *See* 15 U.S.C. 1692e.

19          Because Rahier cannot prove that TCS reported false information to Trans Union,

20   the Court will grant TCS's motion for summary judgment. (Doc. 22 at 5–6.) *See Celotex*

21   *Corp.*, 477 U.S. at 322 (there is no genuine issue of material fact when a party fails to

22   establish an element essential to that party's case and on which that party will bear the

23   burden of proof at trial.).[4]

24   _____

[3]  TCS argues that the Court should preclude Rahier's use of the CRRG to support her
25   claim because Rahier did not timely disclose the CRRG during discovery as required by
     Fed. R. Civ. P. 26 (a)(1)(A)(ii). (Docs. 27 at 6–7; 32 at 5.) Although Rahier admits that she
26   did not timely disclose the CRRG, in light of the Court's conclusion that the CRRG is
     inadmissible, the Court need not decide whether the sanction of exclusion is warranted. For
27   the same reason, the Court also does not address TCS's additional evidentiary challenges
     to Rahier's use of the CRRG.
28
[4]  TCS argues alternatively that a fact question exists as to TCS's bona-fide-error defense.
     (Doc. 31 at 3.) The bona-fide-error defense states a debt collector is not liable for violations

### III.     Conclusion

For the foregoing reasons, the Court concludes that TCS is entitled to summary judgment as a matter of law.

**IT IS ORDERED:**

1.      Plaintiff's Motion for Partial Summary Judgment (Doc. 22) is **DENIED**.

2.      Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED**.

3.      Plaintiff's Counsel's Motion to Withdraw (Doc. 20) is **DENIED** as moot.

4.      The Clerk of Court must enter judgment accordingly and close its file in this action.

Dated this 11th day of July, 2023.

Honorable Jennifer G. Zipps
United States District Judge

---

under the FDCPA when its conduct was "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). In light of the Court's conclusion that Rahier has failed to prove a violation of the FDCPA, the Court does not consider this affirmative defense.